UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JESSE KEVIN DUPLECHAIN, M.D., (II) A PROFESSIONAL MEDICAL CORPORATION | CASE NO. 6:21-CV-00640 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| STATE FARM FIRE AND CASUALTY COMPANY | MAGISTRATE JUDGE HANNA |

## RULING

Before the Court is a Motion to Dismiss for Failure to State a Claim brought by Defendant, State Farm Fire and Casualty Company.[1] Pursuant to its motion, Defendant seeks dismissal of all claims asserted in this matter. Plaintiff, Jesse Kevin Duplechain, M.D., (II), a Professional Medical Corporation, opposes the motion.[2] For the reasons that follow, the motion is GRANTED.

### I.
### BACKGROUND

The Plaintiff in this suit is a professional medical corporation which employs physicians engaged in plastic surgery and non-surgical procedures.[3] Plaintiff purchased a Businessowners Coverage insurance policy ("the Policy") from Defendant, which was in effect at all times relevant to this suit. The Policy includes business interruption. Beginning in March of 2020, in response to the onset of the COVID-19 pandemic, the Governor of Louisiana issued a series of orders requiring nonessential businesses to either suspend or reduce their operations. Plaintiff alleges, "COVID-19

---

[1] ECF No. 10.
[2] ECF Nos. 18, *see also id.* at 22 (Defendant's reply).
[3] ECF No. 1 at ¶ 4. The factual information set forth above is taken from Plaintiff's "Complaint for Declaratory Judgment." ECF No. 1. For present purposes "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.2d 191, 205 (5th Cir. 2007).

and the resulting response by state and local governments" have caused "the physical loss of Plaintiff's property," "interrupted Plaintiff's businesses," forced Plaintiff "to greatly reduce operations," and caused "immense financial losses."[4] To recover its lost revenue, Plaintiff filed a claim with Defendant for coverage under the Policy. On or about December 8, 2020, Defendant denied coverage. Plaintiff then filed this suit, contending coverage is triggered by the "Loss Of Income and Extra Expense" portion of the Policy, including the "Civil Authority" provision. Plaintiff seeks declaratory and injunctive relief, compensatory damages for breach of contract, costs and attorney's fees.

## II.
### STANDARD OF REVIEW

"Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable clam."[5] Such a motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[6] To overcome a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.[7] The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] Although a complaint does not need detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[9] A pleading that merely offers "labels and conclusions" or "a formulaic recitation of

---

[4] ECF No. 1 at ¶ 5.
[5] *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).
[6] *Id.* at 161–62.
[7] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011).
[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level," and not merely create "a suspicion [of] a legally cognizable right of action.") (quoting 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004)).
[9] *Iqbal* at 678 (citing *Twombly* at 555).

the elements" will not suffice.[10] Likewise, a complaint that tenders "naked assertions devoid of further factual enhancement" will not survive a Rule 12(b)(6) motion.[11]

When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[12] However, this tenet does not apply to conclusory allegations, unwarranted deductions, or legal conclusions couched as factual allegations, as such assertions do not constitute "well-pleaded facts."[13] In considering a Rule 12(b)(6) motion, the district court generally "must limit itself to the contents of the pleadings, including attachments thereto."[14] One exception to this rule is that the court may consider "documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."[15] In light of this exception, the Court will consider the insurance policy at issue in this case, as it is attached to Defendant's motion and quoted from at length in the Complaint.

### III.
### LAW AND ANALYSIS

**A.     Applicable Law**

Jurisdiction over this matter is premised upon diversity of citizenship.[16] Accordingly, the Court applies Louisiana's Conflict of Laws codal articles to determine what body of law applies when interpreting the contract of insurance.[17] Under those articles, the law of the state where the

---

[10] *Twombly* at 555.
[11] *Iqbal* at 678 (internal quotation marks, alterations omitted) (quoting *Twombly* at 557).
[12] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (internal quotation marks omitted); *see also Iqbal* at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.")
[13] *Twombly* at 555; *Iqbal* at 678.
[14] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[15] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).
[16] 28 U.S.C. § 1332.
[17] *See Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003); *see also* LOUISIANA CIVIL CODE, Book IV.

insurance contract was issued and executed generally governs the interpretation of the contract.[18] However, a choice-of-law analysis is unnecessary "if the laws of the states with an interest in the dispute do not conflict."[19] Here, neither party states where the Policy was issued, nor otherwise addresses Louisiana's choice of law rules. However, both parties interpret the Policy in accordance with Louisiana law. Accordingly, the Court presumes Louisiana substantive law governs interpretation of the Policy. To determine Louisiana law, district courts are "bound to apply the law as interpreted by the state's highest court."[20] Where such decisions are absent, the court must make an "*Erie*-guess" and "determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."[21] However, if a panel of the Fifth Circuit has ruled on a state law issue and that ruling has not been superseded by either Louisiana jurisprudence or a change in statutory authority, district courts are bound by that interpretation of Louisiana law.[22]

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[23] "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract."[24] "The parties' intent, as reflected by the words of the policy, determine[s] the extent of coverage."[25] The words of an insurance contract are not to be read in isolation, as "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set

---

[18] *See* LA. CIV. CODE art. 3537; *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014).
[19] *Aggreko, L.L.C. v. Chartis Specialty Insurance Company*, 942 F.3d 682, 687 (5th Cir. 2019).
[20] *Barfield v. Madison Cty.*, 212 F.3d 269, 271-72 (5th Cir. 2000).
[21] *Am. Int'l Specialty Lines*, 352 F.3d at 260; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938).
[22] *Lozovyy v. Kurtz*, 813 F.3d 576, 580 (5th Cir. 2015).
[23] *Cadwallader v. Allstate Ins. Co.*, 848 So .2d 577, 580 (La. 2003).
[24] *Id.*; *see also* LA. CIV. CODE art. 2045.
[25] *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 2007).

forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy."[26] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[27] A provision of a contract that is susceptible to different meanings "must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[28] "Ambiguous policy provisions are generally construed against the insurer and in favor of coverage."[29] Under this rule, an equivocal provision seeking to narrow an insurer's obligation is strictly construed against the insurer.[30] This principle however applies "only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations."[31] The insured bears the burden of proving an incident falls within the policy's terms; the insurer bears the burden of proving the applicability of an exclusionary clause within the policy.[32]

**B.    Analysis**

Plaintiff asserts it is entitled to coverage under the Policy's "Loss Of Income," "Extra Expense" and "Civil Authority" provisions. Defendant contends that the forgoing provisions do not provide coverage for losses associated with the COVID-19 pandemic and further asserts that coverage is barred by several exclusions in the Policy. These provisions provide in pertinent part:

---

[26] La. R.S. § 22:881.
[27] LA. CIV. CODE art. 2046; *see also id.* at 2047 (a contract's words are to be given their generally prevailing meaning; words of art and technical terms are given their technical meaning if the contract involves a technical matter); *id.* at 2048 (words susceptible of different meanings are interpreted as having the meaning that best conforms to the object of the contract).
[28] LA. CIV. CODE art. 2049.
[29] *Cadwallader* at 580 (citing LA. CIV. CODE art. 2056).
[30] *Id.*
[31] *Id.*
[32] *Doerr v. Mobil Oil Corp.*, 2000-0947, p. 5 (La. 12/19/00); 774 So.2d 119, 124, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01); 782 So.2d 573; *see also Martco Ltd. v. Wellons, Inc.*, 588 F.3d 864, 880 (5th Cir. 2009).

1. **Loss Of Income**

    a. We will pay for the actual "Loss Of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause of Loss. . . .

    . . . .

2. **Extra Expense**

    a. We will pay necessary "Extra Expense" you incur during the "period of restoration" that you would not have incurred if there had been no accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss. . . .

    . . . .

4. **Civil Authority**

    a. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss Of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises. . . .[33]

The Policy defines Covered Cause of Loss as "accidental direct physical loss to Covered Property" unless the loss is excluded or limited.[34]

Defendant asserts Plaintiff's claim for Loss of Income, Extra Expense and Civil Authority coverage fails as a matter of law, because Plaintiff has not alleged "accidental direct physical loss to" Covered Property as required by the Policy.[35] According to Defendant, "loss of use" unaccompanied by "accidental direct physical loss to" property is insufficient to trigger coverage.[36]

---

[33] ECF No. 10-2 at 70-71.
[34] *Id.* at 21.
[35] ECF No. 10-1 at 17, 25.
[36] *Id.* at 18.

Plaintiff responds that the term "physical loss" does not require "physical damage to a structure," and its allegations of loss of use are therefore sufficient to trigger coverage under the Policy.[37]

The policy language at issue in this case has not been interpreted by the Louisiana Supreme Court. However, the United States Court of Appeals for the Fifth Circuit recently interpreted a substantially similar phrase in *Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co.*[38] In *Q Clothier*, the Fifth Circuit made an *Erie* guess as to how the Louisiana Supreme Court would interpret the phrase "direct physical loss of or damage to property."[39] The Fifth Circuit concluded that the Louisiana Supreme Court would interpret the phrase "to cover only tangible alterations of, injuries to, and deprivations of property."[40] In that case, because closure of the insured's storefront due to governmental pandemic orders caused only a loss of business income—and did not cause a tangible alteration, injury, or deprivation of covered property—the Court held the insured failed to allege facts triggering coverage under the policy."[41] Plaintiff in this matter has identified nothing in the Policy that would justify departing from *Q Clothier*. The plain text of the Policy extends coverage only when there is a "direct physical loss to property"—*i.e.*, a tangible alteration of, injury to, or deprivation of property.[42] Here, there was no tangible alteration of, injury to, or deprivation of Plaintiff's insured property; rather, Plaintiff's preferred use of its facility was restricted.[43] As the "Loss Of Income," "Extra Expense" and "Civil Authority" provisions all

---

[37] ECF No. 18 at 13.
[38] *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 21-30278, 2022 WL 841355, at *4-6 (5th Cir. Mar. 22, 2022).
[39] *Id.* at *3 (finding the policy language "does not cover business income losses caused by civil authority orders closing nonessential businesses in response to the COVID-19 pandemic.")
[40] *Id.* at *4.
[41] *Id.*
[42] *Q Clothier* at *4.
[43] *See e.g. Id.* at *5 ("Although we recognize the government orders placed limitations on the operations of businesses, those limitations did not tangibly alter [the insured's] property or deprive [the insured] of its property."); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (Noting that even if the insured alleged that the COVID-19 virus "was present *and* physically attached itself" to the insured's property, the insured would still fail to state a claim, as the virus's "impact on physical property

require a "Covered Cause Of Loss"—defined as an "accidental direct physical loss to Covered Property"—Plaintiff's allegations are insufficient to state a claim under these provisions of the Policy. Furthermore, the "Civil Authority" provision requires damage to non-scheduled property near to the Covered Property. Here, Plaintiff alleges it incurred losses because access to *its own facility* was reduced due to "action of civil authority." Plaintiff does not allege that access to its facility was reduced due to loss or damage to non-scheduled property.

## IV.
### CONCLUSION

For the reasons set forth herein, the Motion to Dismiss for Failure to State a Claim brought by Defendant, Mt. Hawley Insurance Company, is GRANTED, and all claims brought by Plaintiff are dismissed with prejudice.

THUS DONE in Chambers on this 28th day of March, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days.")